**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **CHARLES MCGRATH, *et al.*,**<br><br>Plaintiffs,<br><br>v.<br><br>**MORGAN STANLEY MORTGAGE LOAN TRUST 2006-9AR, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-9AR, U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR IN INTEREST TO BANK OF AMERICA, NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE, *et al.*,**<br><br>Defendants. | Civil Action No. 25-18156 (ZNQ) (TJB)<br><br>**OPINION** |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon a Motion to Dismiss filed on January 9, 2026 by Defendants Morgan Stanley Mortgage Loan Trust 2006-9ar, Mortgage Pass-Through Certificates, Series 2006-9ar, U.S. Bank National Association, As Trustee, Successor In Interest To Bank Of America, National Association, As Trustee, Successor By Merger To Lasalle Bank National Association, As Trustee ("US Bank") and New Rez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint," with US Bank, "Defendants"). (ECF No. 10.) Defendants filed a Memorandum of Law in support of their Motion. ("Moving Br.," ECF No. 10-1.) Plaintiffs

Charles McGrath and Josephine McGrath ("Plaintiffs") filed an Opposition Brief on February 10, 2026 ("Opp'n Br.," ECF No. 14), to which Defendants filed a Reply Brief ("Reply," ECF No. 15).

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will **GRANT-IN-PART** and **DENY-IN-PART** Defendants' Motion.

## I. BACKGROUND AND PROCEDURAL HISTORY

### A. BACKGROUND

On April 28, 2006, Plaintiffs purchased residential property located in Middletown, New Jersey (the "Property"). ("Am. Compl.," ECF No. 1-1 ¶ 2.)[1] To secure financing for the Property, Mr. McGrath executed a promissory note in the amount of $760,000 (the "Note") and a mortgage on the Property securing the Note (the "Mortgage") (collectively, the "Loan"). (*Id.*) At all times relevant to the Amended Complaint, US Bank had ownership of the Loan. (*Id.* ¶ 3.)

At some point in time, Plaintiffs encountered financial difficulties and fell behind on their Loan payments. (*Id.* ¶ 10.) To avoid foreclosure, Plaintiffs submitted a loss mitigation application to Specialized Loan Servicing ("SLS"), who was the servicer on the Loan at the time. (*Id.* ¶ 11.) Plaintiffs allege that in late 2020, SLS approved Plaintiffs for a forbearance. (*Id.* ¶ 12.) On or about October 27, 2021, SLS and Plaintiffs entered into a trial period plan ("TPP"), which stated that "[o]nce the required amount of trial payments are made a permanent modification will be mailed." (*Id.* ¶ 14.) Plaintiffs allege that they made all the requisite payments and complied with all the obligations in the TPP. (*Id.* ¶ 15.)

[1] Plaintiffs Amended Complaint was initially filed as counterclaim and third-party complaint against Defendants as part of a state court foreclosure proceeding. As such, Plaintiffs' allegations in the Amended Complaint begin on page five.

In February 2022, SLS and US Bank approved Plaintiffs for a Permanent Modification Offer (the "Modification"). (*Id.* ¶ 16.) The Modification stated that in order for Plaintiffs to accept the offer, they must "sign and return both originals of the Modification Agreement" by February 17, 2022. (*Id.* ¶ 17.) Plaintiffs allege that they executed and returned the Modification to SLS by the required date. (*Id.* ¶ 18.) Through the Modification, Plaintiffs monthly payments due on the Loan were reduced by approximately $700. (*Id.* ¶ 20.)

Two years later, on or around July 2, 2024, SLS transferred the servicing of the Loan to Shellpoint. (*Id.* ¶ 23.) The transfer was the result of an acquisition of SLS by Shellpoint's parent company, which resulted in a merger of SLS with Shellpoint in May 2024. (*Id.* ¶¶ 24–25.) When Shellpoint took over the servicing, it asserted that Plaintiffs were in default of the Loan and refused to recognize the Modification. (*Id.* ¶¶ 26–27.) Nonetheless, Plaintiffs continued to make their monthly payments to Shellpoint until October 2024, at which point Shellpoint rejected them. (*Id.* ¶ 28.) Thereafter, US Bank and Shellpoint declared that Plaintiffs were in default of the Loan and initiated a foreclosure proceeding against them (the "Foreclosure Action"). (*Id.* ¶ 30.)

As a part of the Foreclosure Action, Plaintiffs filed an Answer, along with Counterclaims against US Bank and a Third-Party Complaint against Shellpoint (the "Amended Complaint"). In the Amended Complaint, Plaintiffs bring four causes of action: (1) Breach of Contract (Count I); (2) Violation of the Covenant of Good Faith and Fair Dealing (Count II); (3) Violation of the New Jersey Consumer Fraud Act ("NJCFA") (Count III); (4) Violation of the Federal Debt Collection Practices Act ("FDCPA") (Count IV); and (5) violation of the Real Estate Settlement Procedures Act ("RESPA") (Count V). On November 14, 2025, the Superior Court of New Jersey, Chancery Division, dismissed the Foreclosure Action and severed Plaintiffs' counterclaims and third-party claims (the "Severance Order"). (ECF No. 1 ¶ 3.) The effect of the Severance Order dismissed

the Foreclosure Action against Plaintiffs, while at the same time severing Plaintiffs' counterclaims and third-party claims and transferring them to a new case in the Law Division, Monmouth County. (*Id.* ¶ 3.) Defendants then removed that matter to this Court on December 3, 2025. (ECF No. 1.)

## II. SUBJECT MATTER JURISDICTION

The Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

## III. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a district court is required to accept as true all factual allegations in the complaint and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff, *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), but need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 557 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).

## IV. DISCUSSION

### A. BREACH OF CONTRACT (COUNT I)

Defendants argue that Plaintiffs' claim for breach of contract fails as a matter of law because they have not adequately alleged the existence of a valid contract. (Moving Br. at 6.) Specifically, Defendants assert that the Modification was not signed by all the required parties, and that they conducted a title search, which revealed that no permanent modification of the Loan existed. (*Id.* at 7–8.)

In New Jersey, to prevail on a breach of contract claim, the plaintiff must allege: (1) "that the parties entered into a contract containing certain terms"; (2) "that plaintiffs did what the contract required them to do"; (3) "that defendants did not do what the contract required them to do"; and (4) "that defendants' breach, or failure to do what the contract required, caused a loss to the plaintiffs." *Goldfarb v. Solimine*, 245 N.J. 326, 338 (2021) (quoting *Globe Motor Co. v. Idgalev*, 225 N.J. 469, 482 (2016)) (citation modified). A valid contract exists when there is an "offer, acceptance, consideration, and performance by both parties." *Shelton v. Restaurant.com, Inc.*, 214 N.J. 419, 439 (2013). "A contract arises from offer and acceptance, and must be sufficiently definite that the performance to be rendered by each party can be ascertained with reasonable certainty." *Goldfarb*, 245 N.J. at 339 (quoting *Weichert Co. Realtors v. Ryan*, 128 N.J. 427 (1992)). "Where the parties do not agree to one or more essential terms, however, courts generally hold that the agreement is unenforceable." *Weichert Co. Realtors*, 128 N.J. at 435.

Here, Plaintiffs' allegations plainly assert that they entered into a valid contract with Defendants. As alleged, Defendants offered the Modification to Plaintiffs in February 2022. (FAC ¶¶ 16–17.) The offer allegedly required Plaintiffs to comply with two steps to accept the offer. (FAC, Ex. 4 at 158.) First, Plaintiffs were required to "complete and return the enclosed agreement

by the due date." (*Id.*) Second, Plaintiffs had to "continue to make [their] trial period payments on time." (*Id.* at 159.) As alleged, Plaintiffs completed and returned the Modification to Defendants by February 17, 2022, the due date. (FAC ¶ 18.) Plaintiffs also allege that they made all the required payments under the TPP. (*Id.* ¶ 21.) Clearly, the FAC adequately alleges that Defendants offered a permanent modification of the Loan and Defendants accepted the offer by complying with the two steps. Moreover, the Modification reduced Plaintiffs monthly payment due under the Loan by a specified amount (*id.* ¶¶ 19–20), thereby making the Modification "sufficiently definite that the performance to be rendered by each party can be ascertained with reasonable certainty." *Goldfarb*, 245 N.J. at 339. Thus, Plaintiffs have adequately alleged the existence of a valid contract because there is an offer, acceptance, consideration, and performance by all the parties.

Defendants argue that the Modification is not a valid contract because the agreement attached to the FAC is not countersigned by Defendants. (Moving Br. at 7.) However, the allegations in the FAC say nothing about the form needing to be countersigned in order for Plaintiffs to accept Defendants' offer. On the contrary, as alleged the offer Defendants made to Plaintiffs specifically only required that Plaintiffs comply with two steps in order to accept the offer. (FAC, Ex. 4 at 158.) Once Plaintiffs complied with those steps, Defendants' offer was accepted and a valid contract was formed. *See Dandana, LLC v. MBC FZ-LLC*, 507 F. App'x 264, 269 (3d Cir. 2012) ("It has long been established that an offer may be accepted by performance.").

Moreover, Plaintiffs allege that they made payments on the Loan under the Modification for two years, and that those payments were accepted by SLS. (FAC ¶ 28.) This conduct by the parties further demonstrates that they entered into a valid agreement through their performance of the Modification. *See Dandana*, 507 F. App'x at 269 (holding that the parties' performance can

demonstrate an acceptance of a written offer); *see also Block v. Seneca Mortg. Servicing*, 221 F. Supp. 3d 559, 574–76 (D.N.J. 2016) (holding that the absence of the defendant's signature to a modification agreement would not defeat the existence of an agreement given that they accepted the plaintiff's payments for half a year).

Defendants also contend that even if there was a contract, Plaintiffs' breach of contract claim could not be enforced against Shellpoint because it is not in privity of contract with Plaintiffs. (Moving Br. at 7–8.) However, this is necessarily a factual dispute that cannot be resolved at the motion to dismiss stage. As alleged, both SLS and US Bank offered Plaintiffs the Modification. (FAC ¶ 17.) When Plaintiffs allegedly accepted that offer, a valid contract was formed, binding both US Bank and SLS to the terms of the agreement. Plaintiffs further allege that Shellpoint is the successor in interest to SLS and therefore assumed SLS's contractual obligations. Accordingly, Plaintiffs have adequately alleged that Shellpoint is a party to the Modification. *See Napolitano v. BAE Sys. N. America, Inc.*, Civ. No. 04-4286, 2005 WL 1703193, at *3 (D.N.J. July 20, 2005) (holding that a successor-in-interest to a contract could be held liable for breach of contract); *Block*, 221 F. Supp. 3d at 578 (holding that servicing companies could be held liable for breach of the modification agreement). Plaintiffs' breach of contract claim, Count I, will therefore be allowed to proceed against both Defendants.[2]

**B. VIOLATION OF THE COVENANT OF GOOD FAITH AND FAIR DEALING (COUNT II)**

In New Jersey, "[e]very contract contains an implied covenant of good faith and fair dealing." *Wade v. Kessler Inst.*, 172 N.J. 327, 340 (2002) (citation omitted). To sustain a claim

[2] Defendants also argue that a contract does not exist because they conducted a title search for the Modification and their search did not return any results. (Moving Br. at 7.) However, it is black letter law that on a motion to dismiss a Court must accept as true the plaintiff's well-pled factual allegations. Defendants' argument therefore raises a factual dispute that may not be considered at this stage. *See Iqbal*, 556 U.S. at 678.

for breach of the implied covenant of good faith and fair dealing, "a plaintiff must prove that: (1) a contract exists between the parties; (2) the plaintiff performed under the terms of the contract; (3) the defendant acted in bad faith with the purpose of depriving the plaintiff of rights or benefits under the contract; and (4) the defendant's actions caused the plaintiff to sustain damages." *Luongo v. Village Supermarket, Inc.*, 261 F. Supp. 3d 520, 531–32 (D.N.J. 2017) (citation omitted). A party can breach the implied covenant of good faith and fair dealing even if its performance under the contract did not violate an express provision. *See Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assoc.*, 182 N.J. 210, 226 (2005). Accordingly, "[a] breach of the implied covenant of good faith and fair dealing differs from a literal violation of the contract." *Spellman v. Express Dynamics, LLC*, 150 F. Supp. 3d 378, 389 (D.N.J. 2015).

"A plaintiff may not maintain a separate action for breach of the implied covenant of good faith and fair dealing where it would be duplicative of its breach of contract claim." *T.J. McDermott Transp. Co., Inc. v. Cummins, Inc.*, Civ. No. 14-4209, 2015 WL 1119475, at *13 (D.N.J. Mar. 11, 2015). Although a plaintiff may plead their claims in the "alternative," a breach of implied duty claim may still be dismissed "[w]here it is undisputed that a valid and unrescinded contract governs the conduct at issue" and "when the two asserted breaches basically rest on the same conduct." *Express Dynamics, LLC*, 150 F. Supp. 3d at 389–91. At the pleading stage, however, "factual overlap is not fatal" and courts must "view the pleadings with liberality." *Doe v. Princeton Univ.*, 30 F.4th 335, 348 (3d Cir. 2022) (citation modified).

Defendants argue that Plaintiffs' claim for violation of the covenant of good faith and fair dealing must be dismissed because it arises out of the same conduct underlying their breach of contract claim. (Moving Br. at 8–9.) Defendants further contend that Plaintiffs' claim against

Shellpoint must be dismissed because there is no contract that exists between Shellpoint and Plaintiffs. (*Id.* at 10.)

In Opposition, Plaintiffs argue that Defendants breached the covenant in four ways. (Opp'n Br. at 16–19.) First, Plaintiffs argue that Shellpoint refused to accept Plaintiffs' monthly payments in October 2024 without any explanation and was designed to manufacture a default. (*Id.* at 16–17.) Second, Plaintiffs argue that Defendants applied a higher interest rate when calculating the payoff. (*Id.* at 17.) Third, Plaintiffs argue that Defendants acted in bad faith by initiating and prosecuting a foreclosure action. (*Id.* at 18.) And fourth, Plaintiffs argue that Defendants made misrepresentations to Plaintiffs about the existence of a forbearance plan, which Plaintiffs assert demonstrates a deliberate refusal to investigate or correct known errors. (*Id.*)

Even viewing Plaintiffs' claims "with liberality," *Princeton*, 30 F4th at 348, Plaintiffs have still failed to adequately allege a claim for breach of the covenant of good faith and fair dealing. Indeed, Plaintiffs' breach of contract claim encompasses the same conduct of which they complain of in their breach of good faith and fair dealing claim. That is, both claims center on Defendants' alleged refusal to accept Plaintiffs' monthly payments and to apply a higher fixed interest rate. Defendants' actions in that regard are necessarily duplicative of their actions underlying Plaintiffs' breach of contract of claim. *See Wilson v. RoundPoint Mortg. Servicing Corp.*, Civ. No. 21-19072, 2022 WL 3913318, at *4 (D.N.J. Aug. 31, 2022) (dismissing breach of good faith and fair dealing claim where the allegations "encompassed the same conduct" as the plaintiffs' breach of contract claim); *Bijeau-Seitz v. Atlantic Coast Mortg. Services, Inc.*, Civ. No. 12-6372, 2013 WL 3285979, at *6 (D.N.J. 2013) (dismissing the plaintiffs' breach of good faith and fair dealing claim as "duplicative" of the breach of contract claim).

Nor have Plaintiffs plausibly alleged that Defendants breached the covenant of good faith and fair dealing by initiating a foreclosure action against Plaintiff, or by simply refusing to acknowledge the existence of the Modification. As explained above, to succeed on this claim a plaintiff must allege that the defendants acted in "bad faith with the purpose of depriving the plaintiff of rights or benefits under the contract." *Luongo*, 261 F. Supp. 3d at 531–32. Here, in contrast, Defendants exercised legal rights available to them through the New Jersey court system. In doing so, Defendants are of course contesting the existence of the Modification, an argument they have every right to make before a court. However, litigating that issue does not mean that they are acting in "bad faith," and on the contrary, their actions have provided Plaintiffs with the opportunity to seek legal recourse, including with this Court. Thus, absent more, Plaintiffs have failed to allege a breach of the covenant of good faith and fair dealing and Count II will be dismissed.

**C. NEW JERSEY CONSUMER FRAUD ACT (COUNT III)**

"To state a *prima facie* case under the [NJCFA], a plaintiff must demonstrate three elements: (1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal connection between the defendant's unlawful conduct and the plaintiff's ascertainable loss." *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 436 (D.N.J. 2012). Unlawful conduct is divided into three categories: affirmative acts, knowing omissions, and regulatory violations. *See Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17 (1994). When the case is brought by a private plaintiff, as is the case here, the plaintiffs "must show that they suffered an ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any . . . practice declared unlawful under the CFA." *Robery v. SPARC Grp. LLC*, 256 N.J. 541, 311 A.3d 463, 467 (N.J. 2024); *see also Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 244, 872

A.2d 783 (2005) ("An ascertainable loss occurs when a consumer receives less than what was promised.").

Here, Plaintiffs have adequately alleged that Defendants committed an "unlawful act" under the NJCFA. As alleged, Defendants promised to permanently modify Plaintiffs' monthly payments due under the loan if Plaintiffs complied with certain conditions under the TPP. (FAC ¶ 54.) Plaintiffs allegedly complied with all these conditions, which allegedly led to the Modification and Plaintiffs' payments thereunder for approximately two years. (*Id.* ¶¶ 54–56.) Defendants' alleged refusal to permanently modify Plaintiffs' Loan, despite earlier representations to the contrary, are sufficient to demonstrate that they committed an "unlawful act" under the NJCFA. *See Bukowski v. Wells Fargo Bank, N.A.*, 757 F. App'x 124, 129 (3d Cir. 2018) (reversing dismissal of NJCFA claim where there were allegations that the defendants mislead the plaintiffs about their eligibility for a permanent loan modification); *Sequiera v. JP Morgan Chase Bank, NA*, Civ. No. 16-5278, 2019 WL 1434969, at *6 (D.N.J. March 29, 2019) (holding that the complaint alleged an "unlawful act" where there were allegations that the defendants misrepresented to the plaintiffs that they would be eligible for a loan modification if they complied with certain terms).

Plaintiffs, however, have failed to adequately allege that they suffered an "ascertainable loss." According to Plaintiffs, they allege "ascertainable loss" in the FAC because they lost the "benefit of the bargain of the loan modification," and can show "an overpayment on the loan." (Opp'n Br. at 27.) Specifically, Plaintiffs contend that "Shellpoint calculated payoff statements using the wrong interest rate, imposed foreclosure and servicing charges inconsistent with the modification, and demanded inflated sums at closing." (*Id.*). While this may suffice to be an ascertainable loss, the problem with this argument is that these allegations are not actually

contained in the FAC.[3] Indeed, the FAC is completely silent as to the supposed payoff that Plaintiffs discuss in their Opposition Brief and there are no allegations that they overpaid on the Loan. As alleged, Plaintiffs made monthly payments consistent with the terms of the Modification, and then when Defendants reverted to the old payment terms, Plaintiffs stopped making any payments. (FAC ¶ 28.) Stated differently, the FAC does not allege that Plaintiffs made any payments inconsistent with the terms of the Modification or at an inflated rate. Thus, the FAC does not plausibly allege an "ascertainable loss" and Count III will be dismissed.

### D. FDCPA (COUNT IV)

Count IV of the FAC alleges that Shellpoint violated the FDCPA. (FAC ¶¶ 63–80.) "To prevail on an FDCPA claim, a plaintiff must prove that (1) [plaintiff] is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 470 (3d Cir. 2021) (citation modified).

Defendants argue that Count IV must be dismissed because the FAC does not adequately allege that Shellpoint is a "debt collector" within the meaning of the FDCPA. (Moving Br. at 14–17.) Specifically, Defendants contend that loan servicers are generally excluded from the definition of a "debt collector" under the FDCPA and that Shellpoint has a purpose beyond the collection of debts. (*Id.*)

---

[3] The Court is aware that after the FAC was filed, Plaintiffs may have sold their home and, at that point, was charged a payoff amount that was inconsistent with the Modification. (Opp'n Br, Ex. 3.) However, because the FAC does not contain allegations regarding the payoff, the Court can not consider them at this time. *See Waitkus v. Pressler & Pressler, L.L.P.*, Civ. No. 11-6531, 2012 WL 686025, at *3 (D.N.J. March 2, 2012) ("It is well-established that the Court's review of the sufficiency of a claim will not take into account factual allegations that are not made in the Complaint.").

Pursuant to 15 U.S.C. § 1692a, a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts" (the "principal purpose" definition), or any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another" (the "regularly collects" definition). 15 U.S.C. § 1692a(6). Under the "principal purpose" definition, an entity is a "debt collector" if it "has the collection of any debts as its most important aim." *Barbato v. Greystone All., LLC*, 916 F.3d 260, 267 (3d Cir. 2019) (citation modified); *id.* ("As long as a business's *raison d'être* is obtaining payment on the debts that it acquires, it is a debt collector. Who actually obtains the payment or how they do so is of no moment.").

Here, Plaintiffs fail to allege that Shellpoint is a debt collector under the "principal purpose" definition. As alleged, Shellpoint was "the servicing agent for the Loan," "collects payments from borrowers on behalf of others, pays insurance and taxes, and brings loans through foreclosure." (FAC ¶¶ 24, 67.) Based on the allegations in the FAC, it appears that Shellpoint's "most important aim" is entirely unrelated to the collection of any debts but rather geared towards servicing loans. Moreover, as Defendants point out, "mortgage servicing companies are not generally considered debt collectors under the FDCPA." *Hendrickson v. Freedom Mortg. Corp.*, Civ. No. 24-09618, 2025 WL 974948, at *3 (D.N.J. Mar. 31, 2025) (collecting cases).

Plaintiffs' conclusory allegation that Shellpoint is a debt collector under the "principal purpose" definition does not suffice to save its claim. (FAC ¶ 69). Indeed, without any additional factual allegations that Shellpoint's principal purpose is the collection of debts, Plaintiffs FDCPA claim must be dismissed. *See Beaumont v. Fay Servicing*, Civ. No. 16-0378, 2016 WL 4191729, at *3 (W.D. Pa. Aug. 9, 2016) (dismissing *pro se* plaintiff's FDCPA complaint in which "[the

p]laintiff alleged in conclusory terms that the [mortgage servicer] Defendant was a 'debt collector' under the FDCPA" and failed to include any factual assertions in support).

Nor do Plaintiffs plausibly allege that Shellpoint is a debt collector under the "regularly collects" definition. To satisfy this requirement, Plaintiffs must allege that Shellpoint "collect[s] for others in the regular course of business." *Siwulec v. J.M. Adjustment Servs., LLC*, 465 F. App'x 200, 203 n.2 (3d Cir. 2012). "Allegations of communications sent to Plaintiff alone are insufficient to demonstrate that [the defendant] is a 'debt collector' because they fail to meet the 'regularity' requirement." *Coles v. Zucker Goldberg & Ackerman*, Civ. No. 14-1612, 2015 WL 4578479, at *7 (D.N.J. July 29, 2015), *aff'd* 658 F. App'x 108 (3d Cir. 2016). As with their principal purpose allegation, Plaintiffs only conclusory allege that Shellpoint is a "debt collector" under the "regularly collects" definition. (FAC ¶ 66) ("Shellpoint . . . is a 'debt collector' because it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to other creditors."). This allegation is likewise without factual support and contains no details that demonstrate Shellpoint regularly collects debts. Moreover, there are no allegations that Shellpoint regularly collects debts outside of this isolated claim. *See Raciti v. Rushmore Loan Management Services, LLC*, Civ. No. 18-14869, 2020 WL 13816459, at *4 (D.N.J. May 7, 2020) (holding that the regularity requirement was not met where all the plaintiff alleged was that defendant has sent "multiple collection attempts" to the plaintiff); *Hendrickson v. Freedom Mortgage Corporation*, Civ. No. 24-09618, 2025 WL 2987101, at *3 (D.N.J. Oct. 23, 2025) (holding that allegations the defendants "repeatedly attempted to collect a debt from Plaintiff" was insufficient to meet the regularity requirement). Plaintiffs have therefore failed to plausibly allege that Shellpoint is a debt collector under the FDCPA and Count IV will be dismissed.

**E. RESPA (COUNT V)**

Plaintiffs final cause of action alleges that Shellpoint violated 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(e) and (k) by failing to properly respond to the Notice of Error ("NOE") Plaintiffs sent to Shellpoint. (FAC ¶¶ 93–100.) Defendants argue this claim must be dismissed because Plaintiffs did not plead this violation "with particularity" and have not alleged any damages. (Moving Br. at 18–19.) As an initial matter, Defendants have not directed the Court to any authority for their contention that Plaintiffs must plead a RESPA claim with particularity. To the contrary, heightened fact pleading is not required for this claim and Plaintiffs need only allege "enough facts to state a claim to relief that is plausible on its face." *See Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1247 (11th Cir. 2016) (quoting *Twombly*, 550 U.S. at 570). Nor do Defendants even argue what violation, if any, they are contending Plaintiffs failed to adequately allege. Accordingly, the Court will focus on Defendants argument regarding damages.

The Third Circuit has recognized that "damages are an essential element in pleading a RESPA claim." *Lloyd v. N.J. Housing and Mortg. Fin. Agency*, 845 F. App'x 139, 144 (3d Cir. 2021) (quoting *Renfroe*, 822 F.3d at 1246). "The statute provides for actual damages which stem 'as a result of' the servicer's RESPA violation and 'any additional damages . . . in the case of a pattern or practice of noncompliance with the requirements of [the statute] not to exceed $2,000." *Id.* (alterations in original). When a claim is based on actual damages, "the borrower has the responsibility to present specific evidence to establish a causal link between the financing institution's violation and their injuries." *Block*, 221 F. Supp. 3d at 592 (quoting *Giordano v. MGC Mortg., Inc.*, 160 F. Supp. 3d 778, 781 (D.N.J. 2016)). "Actual damages encompass compensation for any pecuniary loss including such things as time spent away from employment while preparing correspondence to the loan servicers, and expenses for preparing, photocopying, and obtaining

certified copies of correspondence." *Crist v. Cenlar FSB*, Civ. No. 23-3448, 2025 WL 296013, at *3 (D.N.J. Jan. 23, 2025) (quoting *Wilson v. Bank of Am., N.A.*, 48 F. Supp. 3d 787, 799 (E.D. Pa. 2014)).

Here, Plaintiffs have failed to adequately allege actual damages "as a result of" Shellpoint's RESPA violation. According to Plaintiffs, they incurred two types of actual damages: (1) their inability to obtain the loan modification with more favorable terms; and (2) Defendants' requests for payment under the pre-Modification terms. (Opp'n Br. at 33.) But as explained earlier, there are no allegations that Plaintiffs in fact paid the inflated bills and thereby suffered a "pecuniary loss" as a result of the overbilling. *See Block*, 221 F. Supp. at 593 (holding that the plaintiffs failed to plead actual damages where there were no allegations that they actually paid the inflated amount due under the loan).

Plaintiffs also allege that they have suffered from actual damages in the form of legal fees and expenses incurred while defending the Foreclosure Action. (FAC ¶ 102.) However, claims for legal fees, costs and expenses are "insufficient to satisfy the actual damages requirement of a RESPA claim because RESPA . . . allows [p]laintiffs to recover fees and expenses in addition to actual damages." *Crist*, 2025 WL 296013, at *3 (alterations in original) (quoting *Davis v. Deutsche Bank Nat'l Trust. Co.*, Civ. No. 16-5382, 2017 WL 6336473, at *8 (E.D. Pa. Dec. 12, 2017); *see also Giordano*, 160 F. Supp. 3d at 783 (holding that litigation expenses are not recoverable under RESPA because it would render the portion of RESPA addressing the "cost of the action" superfluous).

Plaintiffs also allege that they suffered actual damages in the form of emotional distress. (FAC ¶ 102.) Courts appear to be split on whether emotional distress can constitute actual damages under RESPA. *See Giordano*, 160 F. Supp. 3d at 785. However, assuming *arguendo* that non-

pecuniary damages are available under RESPA, Plaintiffs' conclusory allegations about emotional distress are insufficient to state a claim for relief. With respect to emotional distress, Plaintiffs allege the following:

- Great emotional distress driven by the continued fear of losing their Home in foreclosure, which has resulted in anxiety and other mental distress (FAC ¶ 31(e));
- Further, Plaintiff and Shellpoint's intentional and knowing conduct has caused the McGraths to suffer extreme emotional distress driven by the fear that he will lose the Home at foreclosure sale, which has resulted in loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress, which was a foreseeable result of its breach of the Modification (*id.* ¶ 38);
- The McGraths have has suffered, and continues to suffer, significant damages including other legal expenses, other economic loss, as well as anxiety, loss of sleep, and emotional and mental distress (*id.* ¶ 46);
- The McGraths have suffered actual damages as a direct and proximate result of Fay's and SPS's actions including incurring legal fees and legal expenses in defending this foreclosure, anxiety, and emotional distress, as further described, *supra* (*id.* ¶ 102).

The Court finds that these allegations are insufficient because they do not establish that the alleged distress was "as a result" of Defendants' failure to properly respond to the NOE. Without additional allegations, the Court cannot conclude that Plaintiffs alleged emotional distress was caused by any purported RESPA violation. Moreover, it appears that this emotional distress was caused by Defendants' alleged breach of the Modification, as opposed to any failure to properly respond to the NOE. Such conclusory allegations are therefore insufficient to demonstrate that Plaintiffs suffered actual damages under RESPA. *See Hager v. CitiMortgage, Inc.*, Civ. No. 16-03348, 2017 WL 751422, at *9 (D.N.J. Feb. 27, 2017) (dismissing RESPA claim where the alleged emotional distress was not tied to any purported RESPA violation); *Baker v. Central Loan Admin. & Reporting Fsb*, Civ. No. 25-1696, 2026 WL 1678269, at *3 (D.N.J. June 10, 2026) (same).

Plaintiffs also argue that they have sufficiently stated a claim for statutory damages under RESPA. (Opp'n. Br. at 33.) According to Plaintiffs, Shellpoint has had more than 580 consumer

complaints lodged against it related to loan modifications. (*Id.* at 34.) The FAC, however, is devoid of any allegations concerning these consumer complaints. The Court will therefore not consider this argument. *See Waitkus*, 2012 WL 686025, at *3 ("It is well-established that the Court's review of the sufficiency of a claim will not take into account factual allegations that are not made in the Complaint."). Accordingly, Plaintiffs' RESPA claim, Count V, will also be dismissed.

## V. CONCLUSION

For the reasons stated above, the Court will **GRANT-IN-PART** and **DENY-IN-PART** Defendants' Motion to Dismiss. Counts II, III, and IV, and V will be **DISMISSED WITHOUT PREJUDICE**. Plaintiffs shall file an Amended Complaint within thirty days of this Opinion, limited to remedying the deficiencies identified in this Opinion. An appropriate Order will follow.

Date: August 31, 2026

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**